IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| THEODORE F. CRUTCHFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:14-cv-00053 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JOSH D. NASH, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |
| | ) | |

Plaintiff Theodore F. Crutchfield ("Plaintiff") filed a *pro se* Complaint in this Court on November 14, 2014. Before me now is Defendant Deputy Josh D. Nash's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (See Mot. to Dismiss, Jan. 20, 2015 [ECF No. 6].) I have reviewed the pleadings, the arguments of the parties, and the applicable law; the matter is now ripe for disposition. For the reasons stated herein, I will grant Defendant's Motion and dismiss Plaintiff's Complaint.

## I.     STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

On June 1, 2014, at approximately 2:15 a.m., Plaintiff Theodore F. Crutchfield ("Plaintiff") was driving home through Martinsville, VA. (See Compl. pg. 1 [ECF No. 3].) Defendant Deputy Josh D. Nash of the Henry County Sheriff's Office ("Defendant") observed Plaintiff driving erratically and, after following him for a short time, initiated a traffic stop. (See Compl. Ex. A (dash-cam video of traffic stop).)[2] Plaintiff asserts that, while Defendant followed

---

[1] The facts are taken from Plaintiff's *pro se* Complaint and the attached exhibit (a dash-cam video of the traffic stop at issue). At this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] On a Rule 12(b)(6) motion, it is appropriate to consider the pleadings and any evidence attached thereto. When the allegations in the complaint conflict with the attached evidence, the evidence prevails in a motion to dismiss. Tinsley v. OneWest Bank, FSB, 4 F. Supp. 3d 805, 819 (S.D.W.Va. 2014); see also

- 1 -

Plaintiff, Defendant "had blinding super white light on [D]efendants [sic] vehicle," and the Defendant followed Plaintiff "for 8 miles" while "play[ing] cat and mouse games . . . ." (Compl. pg. 1.) The video provided by Plaintiff, however, appears to contradict these claims. When the video begins, Defendant follows Plaintiff for approximately two minutes before he activates his lights. Plaintiff was driving erratically, stopped suddenly without warning, changed lanes without signaling, swerved onto the shoulder, and accelerated erratically. (See Compl. Ex. A.)

Once Defendant pulled Plaintiff over, he quickly ascertained that Plaintiff was not drunk. Plaintiff, however, was belligerent and combative, and accused Plaintiff of harassing him instead of finding the man who stabbed his son. Defendant inquired whether Plaintiff was diabetic; Plaintiff confirmed that he was. Defendant radioed his dispatcher and requested Emergency Medical Services ("EMS") respond to his location to test Plaintiff's blood sugar. Defendant stated to the dispatcher that he did not believe Plaintiff was drunk and he did not smell any alcohol, but he thought he smelled the "fruity smell" that occasionally accompanies a diabetic when his sugar levels are off.[3] Defendant then stated to Plaintiff:

> You're not in any type of trouble, but just to make me feel better and make sure you're okay to drive, rescue is gonna . . . . they're gonna do a sugar check on you, okay? 'Cause I would feel absolutely horrible if you went up the road and had a crash, okay?

---

Fayetteville Investors v. Comm. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("Indeed, in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), the exhibit prevails."). There is no dispute as to the authenticity to the dash-cam video, as Plaintiff attached it to his Complaint and Defendant filed an affidavit affirming its accuracy. (Decl. of Josh D. Nash ¶ 2, Jan. 20, 2015 [ECF No. 7-1].)

[3] Plaintiff argues that Defendant has no knowledge of ketoacidosis, the condition Plaintiff contends would account for the fruity smell. That is neither here nor there. The question at this stage is not whether Defendant was correct in his medical conclusions; the question is only, if everything Plaintiff claims is true, whether he has stated a cognizable cause of action.

(Compl. Ex. A.)  Plaintiff protested that his blood sugar was fine, he was simply tired, that his driving was a result of Defendant playing games and shining lights in his eyes, and that Defendant was harassing him.[4]

When EMS responded to the scene, Defendant stated that Plaintiff was not drunk but that something "was not right."  (Id.)  The Emergency Medical Technician ("EMT") asked Plaintiff if she could check his sugar, and Plaintiff refused.  He stated that his glucose was fine.  Defendant informed Plaintiff that he had two options.  Either he could let the EMTs check his blood sugar level, or Defendant would take him to the hospital to have it checked.  Plaintiff eventually consented to the blood glucose check on the condition that he perform the needle stick himself.  In his Complaint, Plaintiff alleges he "told Defendant and EMTs 'Don't put alcohol on me I'm allergic and it will make a knot on me.'  It blistered."  (Compl. pg. 2.)  The dash-cam video attached to Plaintiff's Complaint completely contradicts Plaintiff's allegations.  According to the dash-cam video, Plaintiff never protested the application of alcohol; in fact, he insisted on some form of antiseptic before his blood was drawn.  (See Compl. Ex. A.)  When provided with an alcohol swab, Plaintiff applied it to his own skin.  (See id.)  It was only after the EMT volunteered the alcohol to "clean [him] off" that Plaintiff cooperated.  (Id.)  Thereafter Plaintiff performed the needle stick and, with some assistance from the EMT, provided blood for the glucose check.  (See id.)

After the glucose test was completed, Defendant asked Plaintiff what his blood sugar normally runs.  Plaintiff responded, "100."  (Id.)  Defendant then informed him that the glucose meter read his blood sugar level as 225.  (Id.)  Plaintiff told Defendant he had been drinking

---

[4] Plaintiff also maintains that he was "in fear for his life being hurt by the deputy."  (Compl. ¶ 2.)  When coupled with the video, Plaintiff asserts that he feared for his life during what can only be described as a pleasant conversation about a mutual friend and Plaintiff and Defendant's mutual passion for motorcycles.  (See Compl. Ex. A.)

- 3 -

coffee and eating doughnuts.  Defendant inquired if there was anyone who could come pick him up; Plaintiff said no.  Defendant offered to drive Plaintiff home if he would leave his car in a nearby parking lot; Plaintiff refused.  After more discussion—during which Plaintiff continued to be uncooperative and accuse Defendant of shining lights in his car, harassing him, and "playing games"—Defendant eventually agreed to follow Plaintiff to his home to ensure that he arrived safely without hurting either himself or another driver.  (See id.)  Plaintiff drove off, Defendant followed him, and Plaintiff made it safely home.  (See id.)  The entire roadside encounter lasted approximately twenty (20) minutes. [5]

Following the stop, Plaintiff alleges that Defendant contacted the Virginia Department of Motor Vehicles ("DMV") which "cause[d] the DMV to take action and punish the plaintiff suspending the plaintiff's driver [sic] license without Due Process of Law no tickets issued no judgment entered by court of law Henry County attorneys had no knowledge of the defendants [sic] actions." (Compl. pg. 3.)  According to other exhibits attached to the Complaint, Defendant requested the DMV conduct a medical review of Plaintiff pursuant to Va. Code Ann. § 46.2-322.  According to DMV, "Deputy Nash informed DMV that he was concerned that [Plaintiff's] high blood sugar level, which was taken at the scene of the traffic stop by EMS, may have been the cause of [his] erratic driving." (Compl. Ex. F.)

_____

[5] Plaintiff now asserts, despite attaching the dash-cam video to his Complaint, that Defendant was actively turning his chest microphone on and off during the traffic encounter.  (See Aff. in Supp. of New Evidence, Mar. 4, 2015 [ECF No. 22-1].)  There is no basis in fact to regard this allegation as true, and the allegation is not included in any of his pleadings.  Even if it is, the standard at this stage is merely whether Plaintiff has stated a claim against Defendant.  As stated herein, Plaintiff has not.  Even if I were to assume that parts of the encounter were omitted, there is ample evidence in the video to conclude that Defendant acted squarely within the bounds of the law and that Plaintiff cannot make out a claim against Defendant.

Moreover, Plaintiff's allegation simply boggles the mind.  To conclude that Defendant was actively editing Plaintiff's words on the roadside during the encounter would require astounding leaps of logic, including: Defendant was planning on violating Defendant's rights when he stopped him; he selectively edited his own words as he spoke so as to avoid audible evidence of his unconstitutional actions; and Defendant knew, *before Plaintiff spoke*, what Plaintiff was going to say, so as to omit *in real time* those passages which would prove harmful to his eventual defense.

Plaintiff filed suit in this Court on November 14, 2014, alleging that Defendant violated his constitutional rights in violation of 42 U.S.C. § 1983. After being served with a summons, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) on January 20, 2015. [ECF No. 6.] Plaintiff was served with a <u>Roseboro</u> notice. Instead of filing a brief in opposition, Plaintiff filed a Motion to Proceed on January 30, 2015 [ECF No. 16], which I construe as a brief in opposition to Defendant's Motion to Dismiss. The parties argued their positions in open court on March 2, 2015.

## II.    <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. <u>Id.</u> The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

## III.    DISCUSSION

Because Plaintiff is proceeding *pro se*, his Complaint, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  "Courts must allow a *pro se* complaint to go forward where the complaint is broad and contains a 'potentially cognizable claim' that the plaintiff can later particularize," Peck v. Merletti, 64 F. Supp. 2d 599, 602 (E.D. Va. 1999).

"Section 1983 of Title 42 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States. Nevertheless, a government official sued under § 1983 is entitled to invoke qualified immunity, which is more than a mere defense to liability; it is immunity from suit itself."  Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  In addition to protecting officers whose conduct does not run afoul of the Constitution,[6] "qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

When examining a claim of qualified immunity, the Court begins by "asking whether the facts, '[t]aken in the light most favorable to the [plaintiff],' show that 'the officer's conduct violated a constitutional right.'  If the answer is no, 'that ends the matter, and the officer is entitled to immunity.'"  Turmon v. Jordan, 405 F.3d 202, 20405 (4th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 2001 (200   1)).  In determining whether a constitutional

---

[6] Though it does not require much by way of explanation, Defendant is entitled to absolute immunity for suits against him in his official capacity seeking money damages.  The law is clear that a deputy sheriff is a state actor for Eleventh Amendment purposes, and is thereby immune from liability for monetary damages.  See U.S. Const. Amend. XI; Smith v. McCarthy, 349 F. App'x 851, 858 n.11 (4th Cir. 2009) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).

violation occurred, the facts are to be viewed in the light most favorable to the injured party—in this case, Theodore Crutchfield.  See Turmon v. Jordan, 405 F.3d 202, 204-05 (4th Cir. 2005) (quoting Saucier, 533 U.S. at 201).  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established" at the time of the violation.  Saucier, 533 U.S. at 201; Turmon, 405 F.3d at 205.  A constitutional right is "clearly established" when "its contours [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  If the right is not "clearly established," the officer is entitled to immunity.  See Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012).  When considering the two-step Saucier analysis, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

When examining the facts in the light most favorable to Plaintiff, it is clear that no constitutional violation occurred.  First, the video provided by Plaintiff as an exhibit to his Complaint establishes that he was driving erratically and swerving on the road.  On two different occasions within one minute, he nearly collided with the highway guardrails.  Thus, Defendant was legally and factually justified in pulling Plaintiff over and thereby effecting a seizure under the Fourth Amendment.  See United States v. McGee, 736 F.3d 263, 269–70 (4th Cir. 2013).  Because that seizure was plainly reasonable, Defendant is entitled to qualified immunity because no constitutional violation occurred.  See Turmon, 405 F.3d at 204−05.

Assuming that the Defendant's blood glucose check on Plaintiff was a search, see Maryland v. King, 133 S. Ct. 1958, 1968–69 (2013) ("Virtually any intrusion into the human body will work an invasion of cherished personal security that is the subject of constitutional

- 7 -

scrutiny." (internal citations and quotations omitted)), there can be no constitutional violation because the facts, taken in the light most favorable to Plaintiff, establish that he consented to any search. This conclusion is confirmed by this Court's holding in Carboni v. Meldrum, 949 F. Supp. 427 (W.D.Va. 1996). In that case, university faculty and staff suspected a graduate student of cheating when, during an exam, she repeatedly excused herself to the restroom. While in the restroom, a university employee observed someone in a stall with notes on the floor and heard the sound of rustling paper around the student's waist as she left the restroom. When approached and asked to submit to a strip search, the student complied with all instructions. She subsequently sued, alleging a violation of 42 U.S.C. § 1983. She contended, among other things, that the search violated her Fourth Amendment rights. The district court held, and the Fourth Circuit affirmed, that the university employees who conducted the search were entitled to qualified immunity:

> The defendants are also entitled to summary judgment on qualified immunity grounds because they were reasonably led to believe that the plaintiff's ready acquiescence to the search indicated her implied consent. Though the question of whether the plaintiff expressly consented to the search is in dispute, the fact that she willingly cooperated with Ms. Armstrong, Dr. Waldron[,] and Dean Meldrum is not. The undisputed fact is that Plaintiff followed Ms. Armstrong and Ms. Webb to the ladies' room without objection and then fully cooperated with the ensuing search. Not only did Carboni help Defendant Armstrong by lifting her shirt and dropping her jeans, she was willing to remove even more clothing and was told not to do so by Armstrong. With that in mind, it becomes apparent that the defendants reasonably believed they were asking Ms. Carboni to subject herself to a search of her person and that, though the search itself may not have been strictly welcome, the plaintiff did not object.

Carboni v. Meldrum, 949 F. Supp. 427, 436 (W.D.Va. 1996), aff'd 103 F.3d 116 (4th Cir. 1996).

The present case presents an even clearer case of consent.[7]  Plaintiff initially refused but, when offered the chance to swab himself with alcohol and perform the needle stick himself, Plaintiff consented to the search and performed it himself.  Contrary to the allegations in his Complaint, the video wholly contradicts his claims that he protested the use of alcohol or the needle stick.  Defendant is entitled to qualified immunity under the reasoning of Carboni because, like Ms. Carboni, Plaintiff agreed to the allegedly unconstitutional conduct for which he now sues.

My conclusions are not altered by Plaintiff's contention that seven miles worth of "cat-and-mouse" games on Defendant's part are omitted from the start of the dash-cam video.  Plaintiff claims in his Complaint that "[m]ost of 8 miles was removed from video by defendant," but that Defendant "played cat and mouse games, [P]laintiff switched lanes several times to allow [D]efendant to pass, [but D]efendant kept playing games . . . ."  (Compl. pg. 1.)  Plaintiff does not have any evidence to support his assertion that those seven miles were recorded.  Moreover, even if they were recorded, and even if the video showed what Plaintiff claims, those allegations do not rise to the level of a constitutional violation.  Refusing to pass a motorist or "playing games" does not infringe on any right guaranteed by the Constitution.  What's more, even if it did, Plaintiff's erratic driving—independent of any alleged "games"—established sufficient cause for the traffic stop.  Thus, even if Defendant played the cat-and-mouse games, and even if that violated some constitutional right, Plaintiff was not harmed by the violation, and cannot recover.  See Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("[N]o compensatory damages may be awarded in a § 1983 suit absent proof of actual injury."); Memphis Comm. Sch. Dist. v.

---

[7] It is true that, "[w]hether a consent to a search was voluntary or was the product of duress or coercion is normally a question of fact to be determined from the totality of the circumstances."  Carboni, 949 F. Supp. at 436 n.6 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226–27 (1973)).  The video provided by Plaintiff as an exhibit to his Complaint, however, clearly shows that he verbally consented to the alleged search. (See Compl. Ex. A.)

Stachura, 477 U.S. 299, 308 (1986) ("[T]he abstract value of a constitutional right may not form the basis for § 1983 damages.").

With regard to Plaintiff's claims of a lack of due process regarding his license suspension, Plaintiff has not alleged that Defendant had any authority over the DMV's review process. [8] If Plaintiff has a complaint regarding the DMV's procedures, Deputy Nash is the wrong party to sue. Moreover, the only factual allegation against Defendant regarding the DMV procedure is that "Defendant filed to the DMV and had plaintiffs [sic] license suspended by-passing the court system." (Compl. pg. 2.) This bare-bones, "the-defendant-harmed-me" allegation is insufficient to survive a Rule 12(b)(6) motion to dismiss, regardless of Plaintiff's *pro se* status. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("As the Court held in Twombly, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); Revene v. Charles Cnty. Com'rs, 882 F.2d 870, 875 (4th Cir. 1989) ("[Section] 1983 claims which on critical elements of a claim merely recite legal conclusions 'wholly devoid of facts,' may properly be dismissed for insufficiency of statement).

## IV.    CONCLUSION

Insofar as Defendant is sued in his official capacity, he is entitled to absolute immunity. Defendant is entitled to qualified immunity because, when all the evidence included in the Complaint is considered, there is no doubt that Defendant acted reasonably and appropriately and that no constitutional violation occurred. In fact, Defendant responded ideally to the situation,

---

[8] Virginia law states that, "[i]f the Department [of Motor Vehicles] has good cause to believe that a driver is incapacitated and therefore unable to drive a motor vehicle safely, . . . it may require him to submit to an examination to determine his fitness to drive a motor vehicle. . . . Refusal or neglect of the person to submit to the examination or comply with restrictions imposed by the Department shall be grounds for suspension of his license or privilege to drive a motor vehicle in the Commonwealth." Va. Code Ann. § 46.2-322 (2014).

- 10 -

and his response was a textbook example of how to deal with a combative and irrational suspect. Defendant's motion to dismiss will be granted.

The Clerk is directed to forward this Memorandum Opinion and accompanying Order to Plaintiff and all counsel of record.

Entered this 19th day of March, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE